UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SHARON THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06CV77 TCM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S BRIEF IN SUPPORT OF THE ANSWER

Nature of Action and Prior Proceedings

This suit involves an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et. seq. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review of a final decision of the Commissioner of the Social Security Administration under Title XVI.

On March 16, 2006, following a hearing, an administrative law judge (ALJ) rendered a decision, in which he found that Plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of his decision (Tr. 20-36).[1] On May 30, 2006, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 10-13). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

---

[1] This case was before the ALJ pursuant to an Appeals Council Order of Remand dated May 19, 2005, which remanded a previous ALJ decision of October 29, 2004 (Tr. 93-98), and directed further evaluation of Plaintiff's carpal tunnel syndrome, further evaluation of Plaintiff's cervical spine impairment, and further assessment of Plaintiff's credibility and RFC (Tr. 20-21, 110-12).

Statement of Facts

Plaintiff was born in September 1968, and reported nine years of formal education (Tr. 21, 133, 130). She filed her current application on May 12, 2003, alleging disability since October 2002, due to three protruding discs in her back, left shoulder problems, knee problems, headaches, and carpal tunnel syndrome in both wrists (Tr. 20-21, 125, 133). She reported previous work experience as a laborer in a factory, aide in a nursing home, and motel housekeeper (Tr. 136-42). The ALJ's decision and Plaintiff's Brief contain a good summary of the relevant medical evidence in this case. Therefore, Defendant adopts the medical evidence as set forth in the ALJ's decision (Tr. 21-33), and Plaintiff's Brief, (pp. 2-7). A more specific discussion of the relevant facts is incorporated into the Argument below with cites to the corresponding transcript pages.

Statement of the Issue

The issue is whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole.

Argument

A. Standard of Review

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. See Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence in the record supports the Commissioner's decision, the court may

not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001). If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. See Young v.Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The Eighth Circuit has noted that "[w]e defer heavily to the findings and conclusions of the SSA." Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

    B. Burden of Proof

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. See 20 C.F.R. § 416.290. A claimant has the burden of proving disability by establishing a physical or mental impairment which will persist for at least 12 consecutive months and prevents her from engaging in substantial gainful activity. See Wiseman v. Sullivan, 905 F.2d 1153, 1155 (8th Cir. 1990). See also 42 U.S.C. §§ 423(d). The Supreme Court in Barnhart v. Walton, 122 S. Ct. 1265 (2002), upheld the Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months. Plaintiff has not met this burden.

    C. The Commissioner's Decision

The ALJ evaluated the entire record and determined that Plaintiff had medically determinable severe impairments consisting of morbid obesity, mild osteoarthritis of the lumbar spine, mild chondromalacia and genu valgus of both patellas, a history of cervical spine disc

bulges, spondylosis, stenosis with discectomy and fusion, bilateral carpal tunnel syndrome with right carpal tunnel release, and depression (Tr. 29). Pursuant to the Appeals Council's remand order instructions of May 29, 2005, the ALJ further evaluated and discussed Plaintiff's impairments including cervical spine and carpal tunnel syndrome impairments (Tr. 21-33). The ALJ then found that Plaintiff's residual functional capacity (RFC), which was limited to the full range of sedentary work, prevented the performance of her past relevant work, but allowed her to perform other jobs which existed in significant numbers in the national economy (Tr. 35). Therefore, Plaintiff was not disabled under the Social Security Act.

D. The Commissioner's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ's credibility findings are not supported by substantial evidence (Plaintiff's Brief, pp. 11-14). However, the ALJ's decision is consistent with the standard for evaluating pain and other subjective complaints set forth in Polaski v. Heckler, 739 F.2d 1320 (order), supplemented, 751 F.2d 943 (8th Cir. 1984), and the regulations at 20 C.F.R. § 416.929. The Eighth Circuit has repeatedly stated that, where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel 226 F.3d 969, 972 (8th Cir. 2000), citing Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir. 2000). When the ALJ referred to the Polaski considerations and cited inconsistencies in the record, he may properly find a claimant not credible. See Lowe v. Apfel 226 F.3d 969, 972 (8th Cir. 2000); McKinney v. Apfel, 228 F.3d 860, 864 (8th Cir. 2000).

In this case, the ALJ's decision and discussion of the overall record of evidence is very lengthy, well-organized, thorough, and detailed (Tr. 20-35). A review of the ALJ's decision shows that he considered the entire record of evidence and discussed objective and opinion

medical evidence, Plaintiff's testimony, treatment measures, compliance with treatment measures, Plaintiff's activities, and Plaintiff's work history (Tr. 21-34). The question is not whether Plaintiff has some pain and limitation. Instead, the question is whether Plaintiff's pain and limitation is credible to the extent that it prevents her from performing substantial gainful activity. See Clark v. Chater, 75 F.3d 414, 417 (8th Cir.1996). Although the medical evidence supported the presence of the "severe" impairments listed above, it does not support Plaintiff's allegation of a disabling level of impairment due to any physical, mental, or combination of conditions.

>In summarizing his lengthy discussion of Plaintiff's credibility, the ALJ stated:
>
>Based on the evidence as a whole, not just the objective medical findings of personal observations, the Administrative Law Judge does not find the allegations of debilitating pain credible. The claimant's use of treatment and medication, the objective medical findings, her limited use of consistent medical treatment, her minimal disclosure of activities, her lack of work restrictions, and her appearance and demeanor are inconsistent with her alleged complaints. The claimant had both cervical spine fusion and right carpal tunnel release. There was no evidence that she was substantially limited in her activities by these surgical procedures or her other diagnosed medical conditions. Her work record was poor. In November 2005, the claimant was incarcerated after she shot at her husband. She admitted to having tried to run down a police officer. The claimant admitted being a felon and having a gun.

(Tr. 34-35).

As discussed below, the ALJ's findings are supported by substantial evidence on the record as a whole.

Although Plaintiff alleged cervical problems following an October 2002 vehicle accident in which she was the driver, initial emergency room cervical spine x-rays were negative other than muscle spasms (Tr. 30, 190, 206). An MRI of Plaintiff's cervical spine in November 2002, revealed bulging discs at C3-4 and C4-5, but no spinal cord compromise (Tr. 30, 205). When

5

Plaintiff was prescribed six weeks of physical therapy in January 2003, she attended only three sessions (Tr. 30, 228-32). An emergency room visit on October 20, 2003, revealed no neck tenderness (Tr. 31, 353). Despite continued complaints of neck pain, an examination on October 6, 2004, with Dr. Kevin Vaught was essentially unremarkable (Tr. 31, 298-99). After Plaintiff underwent a cervical discectomy and fusion on January 18, 2005, Plaintiff reported improvement in her neck pain on May 11, 2005 (Tr. 31, 255, 280). At that time, there were no significant findings on examination (Tr. 31, 280-81). Cervical x-rays revealed good position of the instrumentation with no evidence of instrumentation and early signs of fusion (Tr. 31, 281). A May 2005 CT scan showed post-operative changes at C4-6 with satisfactory appearing fusion and no additional abnormalities (Tr. 31, 277). During an examination on September 26, 2005, at Doctors Inn Clinics, Plaintiff expressed the desire to start a diet program, had no complaints, did not even mention her previous neck surgery, and her neck exhibited full range of motion (Tr. 31, 417). On October 26, 2005, Plaintiff's physical examination was negative (Tr. 31, 414).

With regard to Plaintiff's carpal tunnel syndrome and surgery of the right wrist on November 11, 2004, Plaintiff reported no pain or parasthesia in the right hand eleven days later (Tr. 32, 286-87, 365-67). At that time, Plaintiff's doctor noted good resolution of her right hand symptoms since surgery (Tr. 32, 287). An EMG/NCV study in January 2005, showed definite improvement since a previous study (Tr. 32, 362-63). When Plaintiff reported to Doctors Inn Clinics in September and October 2005, she did not report the diagnosis, surgery, or symptoms related to carpal tunnel syndrome (Tr. 32, 414-18).

Plaintiff also alleged left shoulder pain following a motor vehicle accident in May 2002 (Tr. 32, 198-99). However, on examination, there was no deformity and x-rays showed no

6

abnormalities of the left shoulder (Tr. 32, 198, 211). There were no complaints of left shoulder pain following a motor vehicle accident in October 2002 (Tr. 32, 190-91). During an initial assessment at the Brain and Neurospine Clinic of Missouri on June 24, 2003, an examination was unremarkable with regard to Plaintiff's left shoulder (Tr. 32, 238-39). Although Plaintiff continued to complain of shoulder pain to Dr. Naushad on April 18, 2005, the doctor found no limited range of motion (Tr. 32, 309). Nurse Haggard noted fair range of motion in August 2005, despite complaints of left shoulder pain (Tr. 32, 401). However, when seen at the Doctors Inn Clinics in September 2005, Plaintiff denied any musculoskeletal complaints and her examination was unremarkable (Tr. 32, 417-18).

Despite Plaintiff's complaints of disabling knee pain, an examination in September 2004, indicated that Plaintiff ambulated independently and could perform all activities of daily living without assistance (Tr. 335). At that time, Plaintiff also denied musculoskeletal pain and demonstrated full range of motion of the extremities (Tr. 23, 335). In April 2005, Plaintiff reported to Dr. Naushad that she had bilateral knee pain for two years (Tr. 32, 309). However, she did not show signs of limited range of motion and her gait was normal (Tr. 32, 309). Gait and internal and external rotation were normal on May 3, 2005 (Tr. 32, 411). On May 11, 2005, Plaintiff denied any gait dysfunction and an examination was unremarkable (Tr. 33, 280-81). Plaintiff requested a right knee brace about two weeks later (Tr. 33, 409). At that time, her knee was a little bit swollen (Tr. 33, 409). When Plaintiff returned to see Nurse Haggard on June 15, 2005, Plaintiff displayed appropriate and equal musculoskeletal strength and full range of motion (Tr. 408). On July 11, 2005, Dr. Naushad found normal gait and full range of motion in the knees (Tr. 33, 432). Furthermore, on September 26, 2005, Plaintiff denied any musculoskeletal

7

complaints, and her examination was unremarkable (Tr. 33, 414, 417-18). In fact, she exhibited normal range of motion, strength, and tone in the musculoskeletal system, and her motor, sensory function, reflexes, gait, and coordination were intact (Tr. 33, 417). Although Plaintiff complained of severe left knee pain, Dr. Naushad's findings were unchanged in December 2005 (Tr. 33, 421-22).

The ALJ also considered Plaintiff's alleged disabling headaches (Tr. 33). After Plaintiff complained of headaches in the emergency room after she was involved in a fight in which she alleged being hit on the head several times with a glass beer bottle in April 2002, a CT scan of her head was normal (Tr. 33, 202-04, 214). A CT scan of the facial bones showed no fracture or deformity (Tr. 33, 214). An MRI of the brain was unremarkable in October 2004, although Plaintiff continued to complain of headaches (Tr. 33, 293-94). Plaintiff made no further complaints of headaches (Tr. 33).

While the lack of objective medical evidence is not dispositive to the question of a claimant's credibility, it must be considered as an important factor. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997); Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997); 20 C.F.R. § 404.1529(c)(2). Furthermore, an impairment which can be controlled by treatment or medication is not considered disabling. See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

According to Plaintiff's Disability Report dated May 12, 2003, Plaintiff stated that her doctor ordered her to stop working (Tr. 33, 126). On Plaintiff's recent medical treatment received form dated December 5, 2005, Plaintiff indicated that Dr. Vaught told her that she was not going to get better, that he could not do anything else for her, and that she was could not do

anything at all (Tr. 33, 168). However, the medical records do not reflect any statement by a treating medical source that Plaintiff was to stop working (Tr. 33). Furthermore, the record does not document any physician-imposed significant or long-term limitations on Plaintiff's functional ability (Tr. 33, 172-445).

Plaintiff alleged many significant limitations of daily activities (Tr. 34, 54-56, 146-48). However, the ALJ noted that Plaintiff was vague regarding what she did during the day (Tr. 34). As discussed above, the medical evidence does not support such an alleged inability to function, and no doctors imposed functional limitations on Plaintiff. On September 20, 2004, a nurse noted that Plaintiff ambulated independently and could perform all activities of daily living without assistance (Tr. 23, 335). She exhibited full strength, full ranges of motion, and normal muscle bulk and tone on October 6, 2004 (Tr. 24, 299). It was also noted that Plaintiff could perform all activities of daily living without assistance (Tr. 24, 330). Furthermore, the record cites several motor vehicle accidents that Plaintiff was involved in, and indicates that Plaintiff was involved in a bar fight in April 2002 (Tr. 33, 190, 198-99, 202-03, 337). The Eighth Circuit has noted that activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001).

Plaintiff's work history also does not enhance her credibility (Tr. 34). As noted by the ALJ, Plaintiff's work history is sporadic, characterized by low earnings even prior to her alleged disability, and undermines her overall motivation to work (Tr. 34, 119-24). In Benskin v. Bowen, 830 F.2d 878 (8th Cir. 1987), the Eighth Circuit held that whether a claimant's work record supports his credibility is a question for the Commissioner to consider. Id. at 883. The

9

consistency of a claimant's work history is probative of credibility because it is a measure of the claimant's willingness and motivation to work. Plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on her credibility. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996).

Further detracting from Plaintiff's overall credibility is her incarceration in November 2005, for shooting at her husband, her admission that she tried to run down a police officer, and her admission to being a felon and having a gun (Tr. 28-29, 34-35, 419).

The ALJ also considered Plaintiff's more recent allegation of depression, and determined that although Plaintiff had a "severe" impairment of depression, this, like Plaintiff's other alleged impairments, was not disabling (Tr. 28-29). As with her physical conditions, Plaintiff's doctors did not impose any limitations due to depression or any other mental condition. Plaintiff did not even complain of depression until October 24, 2005 (Tr. 28, 415). At that time, Plaintiff told her nurse that she had been feeling down, was having a lot of problems with her three teenage children, and was not getting along with her boyfriend (Tr. 28, 415). However, she refused to go to the emergency room for an evaluation to determine if she was suicidal (Tr. 28, 415). On October 26, 2005, Plaintiff reported that she was feeling depressed and would like medication, but had no additional complaints other than unintentional weight gain (Tr. 28, 414). On November 2, 2005, Plaintiff claimed that she was not feeling any better, had mood swings, and was only sleeping three hours per night (Tr. 28, 420). However, Plaintiff also stated that she was some better and she smiled a lot even though she claimed to be very unhappy (Tr. 28, 420). On December 9, 2005, Plaintiff reported to Dr. Naushad that her activities of daily living including her relationships, mood, and sleep patterns were worse (Tr. 422). However, she also

10

reported no mental cloudiness, only mild fatigue, and no drowsiness (Tr. 422).

The Eighth Circuit has held that the mere presence of a mental disturbance is not disabling per se, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990); Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). There is no evidence of such severe functional loss in this case. Furthermore, even though Plaintiff has been prescribed antidepressant drugs, this is not evidence to show that Plaintiff has a severe mental impairment. See Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (prescription of antidepressant drugs does not show that the claimant is disabled).

A claimant's subjective complaints may be discounted if there are inconsistencies in the record as a whole. See Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). Because the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's subjective complaints, and because those inconsistencies are supported by the record, his credibility finding should be affirmed. See Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997) (citing Polaski, 739 F.2d at 1322).

Based on his consideration of the entire record, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work (Tr. 35). See 20 C.F.R. § 416.967(a). Specifically, Plaintiff could occasionally lift 10 pounds; sit for a majority of the workday with some walking and/or standing, and perform repetitive hand-finger actions (Tr. 35). This RFC accounts for a significant and credible degree of limitation and is supported by the overall record of evidence discussed above including the findings on examination, the nature of Plaintiff's treatment, and the lack of limitations imposed by Plaintiff's treating and examining medical sources.

By definition, sedentary work is significantly limiting. The regulations define sedentary work as that which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Walking and standing are required only occasionally. See 20 C.F.R.§ 416.967(a). In order to perform sedentary work, an individual does not need to bend or twist and needs to stoop only occasionally. See Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992)(to perform substantially all sedentary and light jobs, an individual does not need to crouch, and needs to stoop only occasionally). Furthermore, the overwhelming majority of sedentary jobs are performed indoors. See Social Security Ruling (SSR) 83-14.

It is the duty of the ALJ to determine Plaintiff's RFC based on all of the relevant evidence. The RFC formulation is a part of the medical portion of a disability adjudication as opposed to the vocational portion which involves consideration of age, education, and work experience. Although it is a medical question, it is not based only on "medical" evidence, i.e., evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to formulate RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir. 2000)(per curiam) (RFC is a determination based upon all the record evidence but the record must include some medical evidence that supports the RFC finding); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995) (it was the ALJ's responsibility to determine Anderson's RFC based on all the relevant evidence). See also 20 C.F.R. §§ 404.945, 416.945;

Social Securing Ruling 96-8p. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). However, the ALJ need only include those impairments and limitations he determines to be credible in his RFC. See Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir. 1995). In this case, Plaintiff's RFC includes only those limitations supported by the record and found credible by the ALJ.

After determining Plaintiff's RFC, the ALJ compared it to her past work and found that such work was precluded by her RFC (Tr. 35). Therefore, the ALJ acknowledged that the burden shifted to the Commissioner to produce evidence of other jobs which existed in significant numbers in the national economy that Plaintiff could perform based on her age, education, work experience, and RFC (Tr. 35).

In order to meet the Commissioner's burden, the ALJ properly utilized the medical-vocational guidelines (Tr. 35). Where the ALJ determines that Plaintiff has either no nonexertional impairments or insignificant nonexertional impairments that do not limit her ability to perform other work identified by the guidelines, then the ALJ may use the guidelines. See 20 C.F.R. §§ 404.1569 and 416. 969 (". . . if the findings of fact made about all factors are the same as that rule, we use that rule to decide whether a person is disabled."); Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996); Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). Furthermore, Social Security rulings clarify that the table rules reflect the potential occupational base of *unskilled* jobs of approximately 2,500 medium, light, and sedentary occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations — each occupation representing numerous jobs in the national economy. See SSR 85-15. See also 20 C.F.R. Pt. 404, App. 2, § 200.00(b). Therefore, based on Plaintiff's age, education, past work experience, and RFC for a

13

full range of sedentary work, Rule 201.23 of 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, directed a finding of not disabled (Tr. 35). See also 20 C.F.R. § 416.969.

Because the ALJ properly determined that Plaintiff retained the RFC to perform other work, Plaintiff was not under a "disability" at any time relevant to his decision. Substantial evidence supports the ALJ's decision.

## Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Plaintiff was not under a "disability" as defined in the Social Security Act. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision should be affirmed.

Respectfully submitted,

CATHERINE L. HANAWAY
UNITED STATES ATTORNEY

  s/ Jane Rund
JANE RUND, Bar #47298
Assistant United States Attorney
111 S. 10th Street, Suite 20.333
St. Louis, Missouri 63102
(314) 539-2200
(314) 539-2777 FAX

OF COUNSEL
Frank V. Smith III
Chief Counsel, Region VII


By
  Jeffrey J. Leifert, NE BAR #21510
  Assistant Regional Counsel

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Anthony W. Bartels, Attorney for Plaintiff, P.O. Box 1640, Jonesboro, Arkansas 72403-1640.

                                              s/ Jane Rund
                                              JANE RUND #47298
                                              Assistant United States Attorney